# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

**FEDERAL TRADE COMMISSION**,

 Plaintiff,

v.

**SEAN CANTKIER, SCOT LADY, JEFFREY ALTMIRE, MICHAEL HALLER, LISA ROYE, ALAN LESTOURGEON, KEAN LEE LIM, GREG RIVERA, and NEIL SPERRY**,

 Defendants.

**Case No. 1:09-cv-00894-CKK**

## PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS MOTION FOR ISSUANCE OF A PRELIMINARY INJUNCTION

**TABLE OF CONTENTS**

I.      INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     DEFENDANTS' BUSINESS PRACTICES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    IDENTIFICATION OF THE NAMED DEFENDANTS. . . . . . . . . . . . . . . . . . . . . . . . 5
        A.      Sean Cantkier. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        B.      Scot Lady. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        C.      Jeffrey Altmire. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        D.      Michael Haller. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        E.      Lisa Roye. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        F.      Alan LeStourgeon. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        G.      Kean Lee Lim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        H.      Greg Rivera. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        I.      Neil Sperry. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IV.     A PRELIMINARY INJUNCTION SHOULD ISSUE AGAINST EACH DEFENDANT
        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        A.      The FTC Has Demonstrated Its Likelihood To Succeed On The Merits. . . . . . . 10
        B.      The Equities Weigh In Favor Of Granting Injunctive Relief. . . . . . . . . . . . . . . . 11

V.      THE SCOPE OF THE PROPOSED PRELIMINARY INJUNCTION IS APPROPRIATE
        IN LIGHT OF DEFENDANTS' CONDUCT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

VI.     CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## TABLE OF AUTHORITIES

### CASES

*Benham Jewelry Corp. v. Aron Basha Corp.*,
    1997 U.S. Dist. LEXIS 15957 (S.D.N.Y. July 18, 1997). . . . . . . . . . . . . . . . . . . . . . . . . 13

*Federal Express Corp. v. Federal Expresso, Inc.*,
    1997 U.S. Dist. LEXIS 19144 (N.D.N.Y. Nov. 24, 1997).. . . . . . . . . . . . . . . . . . . . . . . . 13

*FSLIC v. Dixon*,
    835 F.2d 554 (5th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*FTC v. Affordable Media*,
    179 F.3d 1228 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*FTC v. Gem Merchandising Corp.*,
    87 F.3d 466 (11th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*FTC v. World Travel Vacation Brokers*,
    861 F.2d 1020 (7th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*FTC v. World Wide Factors*,
    882 F.2d 344 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*National Soc'y of Prof. Eng'rs. v. United States*,
    435 U.S. 679 (1978).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Porter v. Warner Holding Co.*,
    328 U.S. 395 (1946).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

### STATUTES

15 U.S.C. § 53(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10

Federal Rule of Civil Procedure 26(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## I.     INTRODUCTION

Plaintiff, the Federal Trade Commission ("FTC"), brought this action on May 14, 2009, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), to a halt a deceptive practice that is diverting consumers searching for the Making Home Affordable and other federal homeowner relief and financial stability programs sponsored by the United States government to websites marketing loan modification services or obtaining leads for the sale of such services.  The Complaint was brought against the one or more unknown individuals or entities who since April 28, 2009:  (a) caused paid advertisements that contained a title or hyperlink labeled MakingHomeAffordable.gov or similar terms to be placed on Internet search results pages when consumers search for "making home affordable" or similar terms; and (b) caused the Internet browsers of consumers who clicked on or otherwise activated such hyperlinks to request web pages from websites other than the official United States government website, http://www.makinghomeaffordable.gov.  Defendants' identities and addresses were unknown to the FTC at that time.

On May 15, 2009, the Court entered the FTC's requested temporary restraining order ("TRO").  Among other things, the TRO prohibited Defendants from continuing their deceptive practices.  The TRO also authorized the FTC to conduct limited expedited discovery to ascertain the identities of the unknown defendants.  Based on information obtained from discovery, the FTC has identified 9 individuals who were engaged in the deceptive conduct and filed its amended complaint naming those persons.[1]  Much of the FTC's legal and factual support has

---

[1] In addition to the nine named defendants, the information received from expedited discovery suggests that other persons and entities may also be involved in the deceptive practices alleged in the Complaint.  The FTC anticipates conducting additional discovery on these persons and entities during the normal course of litigation and, if appropriate, will seek leave of the

(continued...)

already been presented to the Court in the FTC's memorandum in support of the TRO.  (Docket

Entry 2, hereinafter "TRO Brief").  The FTC now submits this supplemental memorandum in

support of its request that a preliminary injunction be issued against these nine defendants.

## II.    DEFENDANTS' BUSINESS PRACTICES

As discussed in the TRO Brief, Defendants pay search engines to deliver their

advertisements on search results pages when consumers type "making home affordable" into a

search window.  (*See* TRO Brief at 5-10.)  Defendants' advertisements, sometimes called

"sponsored links" or "sponsor results," include a header/hyperlink that reads

"MakingHomeAffordable.gov." or slight variations on that domain name.  (*Id.* at 5-6.)  Clicking

on this link does not deliver www.makinghomeaffordable.gov, the official government website

for the Making Home Affordable program.  Instead, it delivers one of several different web

pages that promise to help modify home loans or prevent foreclosure.  (*Id.* at 6-7.)  These

websites collect consumers' personal and financial information either for their own marketing

use or for sale to entities selling loan modification services.  (*Id.* at 8-9.)

Defendants place the various deceptive ads for the benefit of several lead generator

companies.[2]  (PX02 at 5 ¶¶ 10-11.)  For example, defendant Cantkier's ads promoted

homerescuecenter.net for Revix Media.  (*Id.* at 19 ¶¶ 40, 41.)  The lead generator companies

registered numerous Internet websites (or "destination landing pages"), through which

---

[1](...continued)
Court to amend further the Complaint to add them as defendants.

[2] The lead generator companies include The Wisdom Companies, LLC, Revix Media,
LLC, and Underground Elephant, Inc.  (PX02 at 5 ¶ 11.)

2

consumers submit their information.[3]  (*Id.* at 5 ¶ 11.)  Defendants, then, market those websites.

The lead generator companies do not deal directly with Defendants.  (*Id.* at 6 ¶ 12.)  Instead, the

lead generator companies engage the services of affiliate network companies.  (*Id.*)  An affiliate

network company serves as a broker, connecting marketing companies like the lead generators

with advertisers such as Defendants.  (*Id.*)  Typically, a lead generator company would indicate

the destination landing page to be marketed and the commission it would pay for each successful

conversion (*i.e.*, for each consumer who not only clicked through to the destination landing page

but also entered sufficient information to generate a lead).  (*Id.*)  In some instances, a lead

generator will engage several affiliate network companies to market the same destination landing

page.  (*Id.*)  The affiliate network companies would then notify the various advertisers affiliated

with them, including Defendants, of the offer, including the destination landing page to be

advertised and the commission the advertiser would receive for each successful conversion.  (*Id.*)

Many of the Defendants were affiliated with multiple affiliate network companies.[4]  (*Id.*)

        To promote the destination landing pages, Defendants purchase placement on search

engine results pages through pay-per-click bidding processes of the search engines.  (*Id.* at 3-4

¶ 6.)  Defendants identify "keywords" on which they wish to bid, the maximum price-per-click

they are willing to pay when their ads appear and consumers click on them, and the similarity of

---

[3] For example, The Wisdom Companies registered HowCanIStopAForeclosure.com,
LoanModificationHelpNow.com, LoanModificationPros.com, MortgageReductionExperts.com,
LoanModificationConnection.com, and HomeForeclosureFighter.com.  (*Id.*  at 5 ¶ 11.)
Underground Elephant registered Mortgage-Payment-Help.com.  (*Id.*)  Revix Media registered
HomeRescueCenter.com, StartALoanMod.com, and LoanRescueCenter.com.  (*Id.*)

[4] For example, Defendant Cantkier was associated with affiliate network companies
Neverblue, Hydra Network, Primary Ads, Market Leverage, and Wotogepa.  (*Id.* at 19 ¶ 42, Att.
A at 27-28.) Defendant Haller was associated with affiliate network companies Convert2Media,
Hydra Network, Epic Advertising, and Market Leverage.  (*Id.* at 21-22 ¶¶ 49, 50.)

the consumer's query to their keywords that will include them in the bidding to place an ad on those consumers' search results pages (*e.g.*, an "exact" match will trigger a bid only when the consumer's query exactly matches the keywords, a "phrase" match will trigger a bid even if a consumer enters words in addition to the keyword phrase into their query, or a "broad" match that will trigger a bid even when a consumer's query contains different spelling or words related to the keywords).  (*Id.*)

In response to a consumer search query, the search engines present sponsored ads in preferred positions based upon advertisers' bids and other factors.  (*Id.* at 4 ¶ 7.)  Those ads typically appear at the top and on the right margin of the search results pages, followed by "organic search results" that the search engines identify as related to the consumer's query from their vast index and archive of Internet websites.  (*Id.*)  The search engines typically identify pay-per-click advertisements with a designation of "sponsor results" or "sponsored sites" and/or a shaded background.  (*Id.*)

The search engines specify a specific ad format for pay-per-click advertising.  (*Id.* at 4 ¶ 8.)  The "title" is typically in the upper left of the ad, underlined, and in a larger font than the rest of the ad.  The "description" is one to three lines that appear below or to the right of the title. (*Id.*)  The "display URL" typically contains a domain name presented to the right of the title or below the description.  (*Id.*)

Defendants create ads within the search engines' formats that appear to be search results for United States homeowner relief and financial stability programs and include as titles domain names or other identifying terms of such programs.  (*Id.* at 4 ¶ 9, at 20 ¶¶ 44-45, at 22 ¶¶ 51-52, at 24-25 ¶¶ 60-61, Att. B at 30, Att. F at 49, Att. K at 72; PX01 at 1-3 ¶¶ 4-9, at 4-6 ¶¶ 15-18, Att. A at 8, Att. B at 11, Att. C at 14, Att. D at 17, Att. E at 20, Att. F at 24, Att. K at 39, 41, 43,

45, Att. L at 48.)  In some cases, Defendants use a feature of the search engines that inserts a

consumer's search terms as the title of the defendants' pay-per-click advertisement (called a

"dynamic" or "keyword insertion feature), and the title inserted is a domain name or other

identifying term of the United States homeowner relief and financial stability program.  (PX02 at

4 ¶ 9.)

## III.    IDENTIFICATION OF THE NAMED DEFENDANTS

### A.    Sean Cantkier

Sean Cantkier advertises on Yahoo (*id.* at 7 ¶ 14, at 19 ¶ 42, Att. A at 27), MSN (*id.* at 11

¶ 24, at 19 ¶ 42, Att. A at 27), and Advertise.com (*id.* at 19 ¶ 42, Att. A at 27).  He has placed

search engine ads using deceptive keywords, ad titles, and display URLs to misrepresent

affiliation with federal homeowner relief programs.   For example, on Yahoo, Cantkier used

canonical terms "makehomeaffordable.gov" and "makinghomeaffordable" (*id.* at 8 ¶ 17) and ad

titles "Makinghomeaffordable.gov" and "Making Home Affordable.gov" (*id.* at 10 ¶ 21).   On

MSN, Cantkier bid on keywords "makinghomeaffordable," "makinghomeaffordable.gov," "hope

now alliance," "888 995 HOPE," and "financialstability.gov" (*id.* at 13 ¶ 30) and used ad titles

and display URLs   "MakingHomeAffordable.gov" and "FinancialStability.gov" (*id.* at 11-12

¶ 25 ).  Cantkier is an advertiser affiliate with Neverblue, Hydra Network, Primary Ads, Market

Leverage, and Wotogepa.  (*Id.* at 19 ¶ 42, Att. A at 27-28.)  Using search engine ads, he has

promoted destination landing pages, including, www.homerescuecenter.net, for lead generator

Revix Media.  (*Id.* at 19 ¶¶ 40, 41.)

### B.    Scot Lady

Scot Lady advertises on MSN (*id.* at 11 ¶ 24) and Google (*id.* at 14 ¶ 32).  He has placed

search engine ads using deceptive keywords, ad titles, and display URLs to misrepresent

affiliation with federal homeowner relief programs.  For example, on MSN, Lady bid on

keywords "makinghomeaffordable," "makinghomeaffordable.gov," "hope now alliance," "888

995 HOPE," and "financialstability.gov" (*id.* at 13 ¶ 30), used ad title "Hope for Homeowners

Here" (*id.* at 12 ¶ 26), and used display URL "HelpForHomeOwners.org" (*id.*).  On Google,

Lady bid on keywords "financial stability.gov," "fha.com," "financialsecurity.gov," "hope now

alliance," "hope for homeowners," "www.makinghomeaffordable.gov," and

"makinghomeaffordable.gov" (*id.* at 18 ¶ 38) and used ad titles "Makinghomeaffordable.gov,"

"Financial Stability.gov," "Fha Gov," "wwwhud.gov," "www.995hope.org," and

"www.hopenow.com/" (*id.* at 14-15 ¶ 34).  Lady's advertisements direct consumers to his own

webpage HomeOwnerHelp2009.com.  (*Id.* at 20 ¶¶ 44-46, Att. B at 30, Att. C at 33-35, Att. D at

37-45.)

### C.    Jeffrey Altmire

Jeffrey Altmire advertises on Google.  (*Id.* at 14 ¶ 32.)  He has placed search engine ads

using deceptive keywords, ad titles, and display URLs to misrepresent affiliation with federal

homeowner relief programs.   For example, Altmire bid on keywords

"makinghomeaffordable.gov," "www.makinghomeaffordable.gov," and

"makinghomeaffordable" (*id.* at 18 ¶ 38 ), used ad titles "MakingHomeAffordable.gov,"

"Making Home Affordable.com," "MakingHomesAffordable.gov," and

"MakingHomesAffordable.com" (*id.* at 16 ¶ 36 ), and used display URLs "Making.Home-

Affordable.net" and "www-MakingHomeAffordable.com" (*id.*).  Altmire is an advertiser

affiliate with affiliate network company Kowabunga, for which he used deceptive ads to market

destination landing pages StartALoanMod.com and LoanModPros.com (*id.* at 20-21 ¶ 47, Att. E

at 47), and Market Leverage, for which he used deceptive ads to market destination landing page LoanModification321.com (*id.* at 21 ¶ 48).

### D.    Michael Haller

Michael Haller advertises on Yahoo.  (*Id.* at 7 ¶ 14.)  He has placed search engine ads using deceptive keywords and ad titles to misrepresent affiliation with federal homeowner relief programs.  For example, Haller used canonical terms "makinghomeaffordable.gov" and "makinghomeaffordable.com" (*id.* at 9 ¶ 19) and ad title "Making Home Affordable" (*id.* at 10 ¶ 21).  He is an advertiser affiliate with Hydra Affiliate network, for which he used deceptive search engine ads to promote destination landing pages LoanModificationConnection.com, HomeForeclosureFighter.com, ForeclosureSpecialistsUSA,com, and StartALoanMod.com.  (*Id.* at 21-22 ¶ 49.)  He is also an affiliate advertiser for Epic Advertising (through its subsidiary Azoogle Ads), for which he used deceptive search engine ads to promote LoanModificationHelp.com and StopForeclosure2Day.com.  (*Id.*)  Haller also promoted LoanModificationConnection.com through affiliate network Convert2Media.  (*Id.*)  Through affiliate network Market Leverage, Haller promoted LoanModification321.com.  (*Id.* at 22 ¶ 50.)

### E.    Lisa Roye

Lisa Roye advertises on MSN.  (*Id.* at 11 ¶ 24.)  She has placed search engine ads using deceptive keywords to misrepresent affiliation with federal homeowner relief programs.  For example, Roye bid on keywords "financialstability.gov," "makehomeaffordable.gov," and "makinghomeaffordable.gov."  (*Id.* at 13 ¶ 30.)  Roye's advertisements direct consumers to her own webpage EZForeclosureHelp.info. (*Id.* at 22-23 ¶¶ 51-55, Att. F at 49, Att. G at 52-55, Att. H at 57-59.)

**F.     Alan LeStourgeon**

Alan LeStourgeon advertises on Yahoo (*id.* at 7 ¶ 14) and Google (*id.* at 14 ¶ 32).  He has placed search engine ads using deceptive keywords and ad titles to misrepresent affiliation with federal homeowner relief programs.  For example, on Yahoo, LeStourgeon used canonical terms "affordable home making," "affordable home making program," "com naca," "government makinghomeaffordable," "makinghomeaffordable," "makinghomeaffordable.gov," and "naca" (*id.* at 8 ¶ 18) and used ad titles "Making Home Affordable," "Makinghomeaffordable Gov," "www.Makinghomeaffordable.gov," and "Naca Com" (*id.* at 10 ¶ 21).  On Google, LeStourgeon bid on keywords "naca," "www.hud.gov," "making home affordable," "hope for homeowners," "www.financialstabiltiy.gov," and "makinghomeaffordable.gov" (*id.* at 18 ¶ 38) and used ad titles  "NACA Loan Modification," "MakingHomeAffordable Gov," "Naca com," "MakingHomeAffordable.gov," "Making Home Affordable," "FinancialStability.gov," "www.Hud.gov," "Hope For Homeowners," and "www.HopeForHomeowners.com" (*id.* at 16-17 ¶ 37).  LeStourgeon's deceptive ads directed consumers to destination landing pages LoanModificationHelpNow.com, MagicLoanMod.com, and HowCanIStopAForeclosure.com. (*Id.* at 23 ¶ 56, Att. I at 61-68.)

**G.     Kean Lee Lim**

Kean Lee Lim advertises on Google.  (*Id.* at 14 ¶ 32.)  He has placed search engine ads using deceptive keywords and ad titles to misrepresent affiliation with federal homeowner relief programs.  For example, Lim bid on keywords "financial stability.gov," "hopenow.com," "hopeforhomeowner.org," "makehomeaffordable.gov," "hope for homeowners," and "making homeaffordable.gov" (*id.* at 18 ¶ 38) and used ad title "Making Home Affordable" (*id.* at 14

¶ 33).  Lim's deceptive ads directed consumers to destination landing page

MortgageReductionExperts.com. (*Id.* at 23 ¶ 57, Att. J at 70.)

### H.     Greg Rivera

Greg Rivera advertises on Yahoo (*id.* at 7 ¶ 14) and MSN (*id.* at 11 ¶ 24).  He has placed

search engine ads using deceptive keywords and ad titles to misrepresent affiliation with federal

homeowner relief programs.  For example, on Yahoo, Rivera used canonical terms

"makinghomesaffordable.gov," "makinghomesaffordable.com," "makinghomeaffordable.org,"

"makinghomeaffordable.gov," "makinghomeaffordable.com," "hopenow," "hope now.com,"

"financialstability.gov," and "995hope.org" (*id.* at 9-10 ¶ 20) and used ad titles "Making Home

Affordable," "Makinghomeaffordable.com," "Financialstability.gov," "Hope now," and

"Hopenow.com" (*id.* at 10 ¶ 21).  On MSN, Rivera bid on keywords "hope now.com,"

"hopenow.com," and "hope for homeowners" (*id.* at 13 ¶ 30) and ad title "hopenow" (*id.* at 12-

13 ¶ 29).  He is an advertiser affiliate with Kowabunga, for which he used deceptive search

engine ads to promote destination landing page StartALoanMod.com.  (*Id.* at 23-24 ¶¶ 58-59,

Att. E at 47.)

### I.     Neil Sperry

Neil Sperry advertises on MSN (*id.* at 11 ¶ 24) and Google (*id.* at 14 ¶ 32).  He has

placed search engine ads using deceptive keywords and ad titles to misrepresent affiliation with

federal homeowner relief programs.  For example, on MSN, Sperry bid on keywords "making

home affordable.gov," "www.makinghomeaffordable.com," and "makehomeaffordable.gov" (*id.*

at 13 ¶ 30) and used ad title "{Keyword: MakingHomeAffordable.gov}" (*id.* at 12 ¶ 27).  On

Google, Sperry bid on keywords "makehomeaffordable.gov," "making home affordable gov,"

and "makinghomeaffordable.gov" (*id.* at 18 ¶ 38) and used ad titles "{Keyword: Making Home

Affordable}" and "{Keyword: MakingHomeAffordable.gov}" (*id.* at 15 ¶ 35).  Sperry's

deceptive search engine ads direct consumers to destination landing page MortgageFit.com.  (*Id.*

at 24-25 ¶¶ 60-62, Att. K at 72, Att. L at 74.)

## IV.    A PRELIMINARY INJUNCTION SHOULD ISSUE AGAINST EACH DEFENDANT

As discussed in the TRO Brief, this Court has the authority to enter preliminary

injunctive relief pursuant to the second proviso of Section 13(b) of the FTC Act, 15 U.S.C.

§ 53(b).  *See, e.g., FTC v. Gem Merchandising Corp.*, 87 F.3d 466, 469 (11th Cir. 1996).

Moreover, the FTC meets the standard for granting a government agency's request for a

preliminary injunction, namely (1) there is a likelihood that the FTC  ultimately will succeed on

the merits against each Defendant, and (2) the balance of the equities favors entry of the

requested preliminary relief.  *See, e.g., FTC v. Affordable Media*, 179 F.3d 1228, 1233 (9th Cir.

1999); *FTC v. World Travel Vacation Brokers*, 861 F.2d 1020, 1029 (7th Cir. 1988).  As set

forth in the TRO Brief and herein the FTC has amply demonstrated that it will ultimately

succeed on the merits of its claims and that the balance of equities favors injunctive relief.

### A.    The FTC Has Demonstrated Its Likelihood To Succeed On The Merits

As described above and evidenced in the exhibits and declarations to this memorandum

and the TRO Brief, the FTC is likely to succeed in establishing that Defendants are violating

Section 5 of the FTC Act.  Defendants have violated Section 5 of the FTC Act by falsely

representing they are the United States government.  Specifically, through the use of the

makinghomeaffordable sponsored links, each Defendant has falsely represented that he or she

operates www.makinghomeaffordable.gov and is a part of or affiliated with the United States

government.  The headings and active hyperlinks on these sponsored links use the domain name

of the official Making Home Affordable program website for the Departments of the Treasury

and Housing and Urban Development.  None of the Defendants is affiliated with the federal

government.  Clicking on their misleading hyperlinks leads *not* to the official site of the Making

Home Affordable program, but instead to websites that solicit sensitive personal and financial

information to be used by marketers employed by for-profit mortgage modification services.

These false claims are expressly made through the use of the makinghomeaffordable.gov

hyperlink and strongly implied in the subsequent website advertising.

     **B.**       **The Equities Weigh In Favor Of Granting Injunctive Relief**

     The preliminary relief sought here would enjoin Defendants' deceptive use of

"makinghomeaffordable.gov" or other advertising that implies a connection to the Making Home

Affordable program or other governmental programs.  The Treasury Department and the

Department of Housing and Urban Development have engaged in a substantial public education

campaign to publicize www.makinghomeaffordable.gov as the gateway to information about the

government's loan refinancing and modification programs and free housing counseling services.

Defendants' practices dilute and undermine those efforts.

     In contrast, the private equities in this case are not compelling.  Compliance with the law

is hardly an unreasonable burden.  *See FTC v. World Wide Factors*, 882 F.2d 344, 347 (9th Cir.

1989) (stating "there is no oppressive hardship to Defendants in requiring them to comply with

the FTC Act, refrain from fraudulent representation or preserve their assets from dissipation or

concealment").  Because the injunction will preclude only harmful, illegal behavior, the public

equities supporting the proposed injunctive relief outweigh any burden imposed by such relief on

Defendants.  *See*, *e.g.*, *National Soc'y of Prof. Eng'rs. v. United States*, 435 U.S. 679, 697

(1978).

## V.     THE SCOPE OF THE PROPOSED PRELIMINARY INJUNCTION IS APPROPRIATE IN LIGHT OF DEFENDANTS' CONDUCT

The scope of the proposed Preliminary Injunction is appropriate in light of Defendants' past conduct and the likelihood of recurrence absent such relief.  The FTC requests a Preliminary Injunction that restrains Defendants from any advertising that includes the domain name makinghomeaffordable.gov or financialstability.gov, any variation of those domain names,[5] any domain name that includes "gov," or any other domain name associated with a federal homeowner relief or financial stability program.  The Preliminary Injunction would also prohibit Defendants from diverting consumers from makinghomeaffordable.gov, financialstability.gov, or other federal homeowner relief or financial stability program website, and from misrepresenting that they operate such websites or are affiliated with the United States government.

The FTC also seeks a provision allowing for the immediate commencement of discovery. District courts are authorized to depart from normal discovery procedures and fashion discovery to meet discovery needs in particular cases.  Federal Rule of Civil Procedure 26(d) authorizes the Court to alter the timing of when discovery may begin.  As discussed above, there are numerous defendants none of whom appear to have acted in concert or participation with one another. Thus, absent the requested provision, the FTC would need to coordinate nine separate Rule 26(f) conferences before discovery could commence, which would delay the FTC's continuing efforts to identify additional parties responsible for the deceptive conduct at issue in this case. These types of discovery orders reflect the Court's broad and flexible authority in equity to grant preliminary emergency relief in cases involving the public interest.  *See Porter v. Warner*

---

[5] Including variations through spaces, punctuation or capitalization, or the use of suffices such as  "com," "net, "org" or "info."

*Holding Co.*, 328 U.S. 395, 398 (1946); *FSLIC v. Dixon*, 835 F.2d 554, 562 (5th Cir. 1987);

*Federal Express Corp. v. Federal Expresso, Inc.*, 1997 U.S. Dist. LEXIS 19144, at * 6

(N.D.N.Y. Nov. 24, 1997) (early discovery "will be appropriate in some cases, such as those

involving requests for a preliminary injunction") (quoting commentary to Fed. R. Civ. P. 26(d));

*Benham Jewelry Corp. v. Aron Basha Corp.*, 1997 U.S. Dist. LEXIS 15957, at *58 (S.D.N.Y.

July 18, 1997) (courts have broad powers to grant expedited discovery).

## VI.   CONCLUSION

Defendants are diverting consumers from the Unites States governments' central source

of information to help homeowners at risk of losing their homes.  There is no legitimate

justification for their practices.  Therefore, the FTC requests this Court to enter the proposed

Preliminary Injunction.

Dated: June 22, 2009                            Respectfully submitted,

                                               DAVID C. SHONKA
                                               Acting General Counsel


                                                 /s/Gregory A. Ashe
                                               LAWRENCE HODAPP, DC Bar #221309
                                               GREGORY A. ASHE, DC Bar #451552
                                               RONALD G. ISAAC, DC Bar # 355834
                                               Federal Trade Commission
                                               600 Pennsylvania Avenue, N.W.
                                               Washington, D.C. 20580
                                               202-326-3105 (Hodapp)
                                               202-326-3719 (Ashe)
                                               202-326-3231 (Isaac)
                                               202-326-3768 (fax)
                                               lhodapp@ftc.gov
                                               gashe@ftc.gov
                                               risaac@ftc.gov

                                               Attorneys for Plaintiff
                                               FEDERAL TRADE COMMISSION

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**,<br><br>         Plaintiff,<br><br>v.<br><br>**SEAN CANTKIER, SCOT LADY, JEFFREY ALTMIRE, MICHAEL HALLER, LISA ROYE, ALAN LESTOURGEON, KEAN LEE LIM, GREG RIVERA, and NEIL SPERRY**,<br><br>         Defendants. | **Case No. 1:09-cv-00894-CKK** |

**CERTIFICATE OF COUNSEL REGARDING NOTICE TO DEFENDANTS**

Prior to filing an amended complaint on June 18, 2009, the Federal Trade Commission ("FTC" or "Commission") provided notice of the filing of this action and copies of the FTC's original complaint (Docket Entry 1) and the temporary restraining order ("TRO") (Docket Entry 4) to all persons who were subsequently named as Defendants in the amended complaint.

After filing an amended complaint, the FTC took the following steps to provide all pleadings and papers in this action to Defendants and notify them that they had been named as Defendants and that they have the right to appear at the Preliminary Injunction hearing and to submit papers in response to the order to show cause:

- On June 18, 2009, the FTC placed FedEx packages containing a cover letter and attached papers in the proper location for FedEx pickup at 601 New Jersey Avenue, N.W., Washington DC 20001, prior to the 7:00 pm scheduled pickup, scheduled for delivery on June 19, 2009.  The cover letter notified each person that he or she had been named as a Defendant in this action and provided the date,

1

time, and location of the Preliminary Injunction hearing, and the deadline for

filing additional papers in support of or in opposition to the entry of a preliminary

injunction.  Each FedEx package contained the following documents:   the First

Amended Complaint (Docket Entry 6), the TRO motion, memorandum, and

certificate of counsel (Docket Entry 2-1), the Exhibits filed in support of the

motion for a TRO (Docket Entry 2-2), and a Notice of Lawsuit and Request to

Waive Service & Waiver of Service forms pursuant to Federal Rule of Civil

Procedure 4(d).  Defendant Kean Lee Lim does not have a mail address within the

United States, so the same documents were emailed to two email addresses that

he provided to Google.

- On the morning of June 19, 2009, FTC counsel learned that FedEx had not picked

up any packages from the 601 New Jersey Avenue, N.W. building the previous

evening because the FedEx personnel arrived after 7:30 pm and the building

guards would not admit them to the building.  Upon learning that the FTC papers

would not be served until the following Monday, June 22, the FTC served copies

of the same cover letter and papers that were in the FedEx packages, by email, to

all Defendants or their counsel, except Kean Lee Lim who had already been sent

the documents by email.

- Today, June 22, 2009, the FTC served the FTC's proposed preliminary injunction, supplemental memorandum, supplemental exhibits, and this certification by FedEx and by email upon all Defendants.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at Washington, D.C. on June 22, 2009.

   _/s/ Lawrence Hodapp_
Lawrence Hodapp
Attorney for the Federal Trade Commission

3

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

---

**FEDERAL TRADE COMMISSION**,

      Plaintiff,

v.

**SEAN CANTKIER, SCOT LADY, JEFFREY
ALTMIRE, MICHAEL HALLER, LISA
ROYE, ALAN LESTOURGEON, KEAN LEE
LIM, GREG RIVERA, and NEIL SPERRY**,

      Defendants.

**Case No. 1:09-cv-00894-CKK**

---

**CERTIFICATE OF SERVICE**

I hereby certify that on June 22, 2008, I electronically filed (1) **PLAINTIFF'S
SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS MOTION FOR ISSUANCE
OF A PRELIMINARY INJUNCTION**, (2) **EXHIBITS IN SUPPORT OF PLAINTIFF'S
SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS MOTION FOR ISSUANCE
OF A PRELIMINARY INJUNCTION**, (3) **CERTIFICATE OF COUNSEL REGARDING
NOTICE TO DEFENDANTS**, and (4) **[proposed] PRELIMINARY INJUNCTION** with the
Clerk of Court using the CM/ECF system which will automatically send email notification of
such filing to the following attorneys of record:

      Gregory A. Ashe
      Lawrence Martin Hodapp

The undersigned counsel further certifies that courtesy copies of the documents will be
sent via Federal Express and/or email to the following parties:

      Barry Benjamin, Esq.
      Kilpatrick & Stockton
      31 West 52nd Street, 14th Floor
      New York, NY 10019
      Attorney for Sean Cantkier

      Adam Bird, Esq.
      Gray Robinson P.A.
      1795 W. Nasa Blvd
      Melbourne, FL 32901
      Attorney for Scot Lady

1

Jan Medoff, Esq.
429 Forbes Ave, Suite 1610
Pittsburgh, PA 15219
Attorney for Jeffrey Altmire

David Gunter, Esq.
Dean Mead
8240 Devereux Dr, Suite 100
Viera, FL 32940
Attorney for Alan LeStourgeon

Erik Syverson, Esq.
617 S. Olive St., Suite 400
Los Angeles, CA 90014
Attorney for Greg Rivera

Michael Haller
345 Blaine St.
Missoula, MT 59801

Lisa Roye
1720 Epps Bridge Pkwy, Suite 108-124
Athens, GA 30606

Kean Lee Lim
Denai Pinang 6
Seri Tanjung Pinang
10470 Seri Tanjung Pinang, Pinang
MALAYSIA

Neil Sperry
400 W. Louisiana St.
McKinney, TX 75609

*/s/Gregory A. Ashe*
Gregory A. Ashe
Attorney for the Federal Trade Commission