**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> SEAN CANTKIER, *et al.*, <br><br> Defendants. | Civil Action No. 09-00894 (BAH) |

## MEMORANDUM OPINION

The Federal Trade Commission ("FTC" or "Plaintiff") brought this action against defendant Scot Lady for allegedly misrepresenting his affiliation with federal homeowner assistance programs in online advertisements. The FTC alleges that Mr. Lady placed deceptive ads on various web search engines. These web search ads, *inter alia*, incorporated the names and the official website addresses of federal programs, but, when clicked, the ads directed web users to Lady's private websites that collected marketing leads for mortgage loan modification or foreclosure relief services. The FTC also alleges that Lady's lead collection websites themselves contained deceptive representations, such as the claim that he has a "97% Success Rate" in helping his clients obtain a mortgage modification. Lady moved to dismiss the complaint for failure to state a claim upon which relief can be granted and also moved to strike certain portions of the complaint. For the reasons discussed below, the Court denies Lady's motions.

## I.      Factual and Procedural Posture

The FTC originally filed this action on May 14, 2009 as a John Doe case against One or More Unidentified Parties. ECF No 1. On June 18, 2009, the FTC filed a First Amended

Complaint identifying and naming several individual defendants — including, as relevant here, defendant Lady ("Lady" or "Defendant").[1] ECF No. 6. Defendant Lady was served on June 18, 2009. ECF No. 8, 27.

On December 7, 2009, Lady moved to dismiss the First Amended Complaint for failure to state a claim and moved to strike certain portions of the First Amended Complaint. ECF No. 58, 59. This motion was denied as moot with leave to refile after the Court granted the FTC's motion to file its Second Amended Complaint. ECF No. 92. On March 29, 2010, Lady filed a renewed motion to dismiss and motion to strike. ECF No. 94, 95.

In its Second Amended Complaint, the FTC alleges the following facts.

In response to the recent crisis in the housing market, the federal government introduced and widely publicized a number of federal homeowner relief and financial stability programs aimed at reviving the United States economy and assisting distressed homeowners whose mortgage loans have become unaffordable. Second Amended Complaint ("SAC") ¶ 15. These programs are promoted through various government websites, such as www.financialstability.gov and www.makinghomeaffordable.gov. *Id.*

In addition, the Department of Housing and Urban Development ("HUD") has designated thousands of HUD-approved non-profit housing counseling agencies to provide assistance to consumers who are at risk of foreclosure or falling behind on their mortgage payments. *Id.* ¶ 17. These HUD-approved housing counseling agencies provide services at no cost to homeowners, negotiating with lenders to make homeowners' mortgage loans more affordable. *Id.* To publicize these services, HUD has engaged in a substantial public education campaign, including joint efforts with the Treasury Department and other federal agencies, a toll-free number, 1-888-

[1] There were originally nine individual defendants named, but only Lady remains; two defendants were voluntarily dismissed and six settled with the FTC.

995-HOPE, and an alliance with the Homeowner Preservation Foundation and the Hope Now Alliance. *Id.*

The FTC has alleged that Lady and certain other defendants were running deceptive online advertisements featuring the names, phone numbers, and website addresses of federal homeowner relief and financial stability programs. *Id.* ¶¶ 25-27. The advertisements allegedly appeared on popular web search engines, such as Google and MSN, and were targeted to users using as search terms keywords related to the federal assistance programs. *Id.* ¶¶ 20-25. The Second Amended Complaint alleges that the advertisements represented that they were sponsored by federal homeowner relief and financial stability programs by featuring text and titles associated with those programs, including "makinghomeaffordable.gov" and "financialstability.gov." *Id.* ¶¶ 25-27. When web users clicked these ads, they were not directed to the websites for the federal programs, but rather to private Internet websites ("lead collection websites") that collected marketing leads for mortgage loan modification or foreclosure relief services. *Id.* ¶¶ 26-28. These lead collection websites had no actual connection with government programs; they solicited consumers to enter personal identifying and confidential financial information, and then the operators of the websites sold the consumers' confidential information as marketing leads to persons who sell mortgage loan modification or foreclosure relief services. *Id.*

The FTC, *inter alia*, sought preliminary injunctive relief against the defendants' allegedly deceptive practices. On June 25, 2009, the Court held a hearing on an order to show cause as to why a preliminary injunction should not issue against Lady and certain other defendants.[2] *See* Preliminary Injunction, ECF No. 26. No defendants appeared at the hearing. The Court determined that there was "good cause to believe that Defendants Scot Lady [and

---

[2] The FTC and four defendants stipulated to the entry of preliminary injunctions. ECF No. 18-25.

others] have engaged, and are likely to continue to engage, in acts or practices that violate Section 5 of the FTC Act, 15 U.S.C. § 45, and that the FTC is, therefore, likely to prevail on the merits of this action." Preliminary Injunction at 2. Specifically, the Court found it likely that "Defendants Scot Lady [and others] have engaged in illegal activity by placing advertisements on Internet search results pages that divert consumers searching for the Making Home Affordable program or other homeowner relief or financial stability programs of the United States government to websites marketing loan modification services or obtaining leads for the sale of such services." *Id.* at 2-3.

Accordingly, on June 25, 2009, the Court entered a preliminary injunction that, *inter alia*, enjoined Lady and other defendants from placing Internet advertisements that contain hyperlinks labeled "MakingHomeAffordable.gov," "financialstability.gov," or any other term that identifies a federal homeowner relief or financial stability program, or that contain the top-level domain name "gov," or otherwise misrepresent an affiliation with a federal homeowner relief or financial stability program. *Id.* at 6. The preliminary injunction also prohibited Lady and other defendants from making any false representation that they are affiliated with the U.S. government or that they operate federal homeowner relief or financial stability programs. *Id.* at 6-7.

The Second Amended Complaint alleged that Defendant's "deceptive acts or practices" violated Section 5(a) of the Federal Trade Commission Act ("FTC Act" or the "Act"), 15 U.S.C. § 45(a). SAC ¶¶ 1, 34-44. Specifically, the FTC alleged three counts against Defendant Lady: that he falsely represented that he operated federal homeowner relief or financial stability websites and had an affiliation with the United States government (Count I); that he falsely represented that he would "obtain for consumers mortgage loan modifications, in all or virtually

4

all instances, that will make their mortgage payments substantially more affordable" (Count II);

and that he falsely represented that "he has helped over 97% of his clients obtain a mortgage loan

modification" (Count III). *Id.* ¶¶ 36-44.

Pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), the Second Amended

Complaint seeks to permanently enjoin Defendant's allegedly deceptive practices and to obtain

equitable monetary remedies, such as rescission or reformation of contracts, restitution, and

disgorgement of ill-gotten monies. *Id.* ¶ 46, Prayer for Relief.

On February 25, 2011, the Court heard oral argument on Defendant's motion to dismiss

the Second Amended Complaint pursuant to Rule 12(b)(6) and his motion to strike pursuant to

Rule 12(f).

The motions are presently before the Court.

## II.    Discussion

### A.  Motion to Dismiss

#### i.      Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff need only plead "enough

facts to state a claim to relief that is plausible on its face" and to "nudge[ ] [his or her] claims

across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007); Fed. R. Civ. P. 12(b)(6).  "[A] complaint [does not] suffice if it tenders naked assertions

devoid of further factual enhancement." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L.Ed.2d

868 (2009) (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 557).  Instead, the

complaint must plead facts that are more than "merely consistent with" a defendant's liability;

"the plaintiff [must plead] factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Id.*

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563. Under the standard set forth in *Twombly*, a "court deciding a motion to dismiss must . . . assume all the allegations in the complaint are true (even if doubtful in fact) . . . [and] must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged." *Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc*., 525 F.3d 8, 18 (D.C. Cir. 2008) (internal quotations marks and citations omitted).

In addition, Rule 9(b) imposes a heightened pleading standard for fraud claims. Rule 9(b) requires a plaintiff asserting a claim for fraud or mistake to plead the circumstances constituting the fraud or mistake with particularity. Fed. R. Civ. P. 9(b). The plaintiff must "state the time, place, and content of the false representations, the fact misrepresented. . . and identify individuals allegedly involved in the fraud." *Haralson v. Mgmt. & Training Corp.*, 724 F. Supp. 2d 82, 84 (D.D.C. 2010) (citing *U.S. ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (internal quotation marks omitted)); *see also Stevens v. InPhonic, Inc.*, 662 F. Supp. 2d 105, 114 (D.D.C. 2009) ("The complaint must . . . provide a defendant with notice of the 'who, what, when, where, and how' with respect to the circumstances of the fraud in order to meet this enhanced pleading standard.") (internal quotation marks omitted).

The Court will analyze the applicability of Rule 9(b) to the claims in this action below.

### ii.    Analysis

Defendant makes several arguments in support of his motion to dismiss. First, Defendant argues that the FTC has failed to allege "substantial injury" to consumers that was not "reasonably avoidable" by consumers themselves, which Defendant asserts is a required element

of any claim for deceptive acts or practices under Section 5 of the FTC Act. Second, Defendant argues that the heightened pleading standards of Rule 9(b) apply in this case and that the FTC has failed to satisfy them. Third, Defendant argues that Second Amended Complaint fails to state a claim for relief under Rule 8(a) and the pleading standard set forth in *Twombly* and *Iqbal*.

### a. Elements of a Section 5(a) Claim for Deceptive Acts or Practices

Section 5(a) of the FTC Act prohibits "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a). To prove a deceptive act or practice in violation of Section 5(a) of the FTC Act, the FTC must show: (1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances, and that (3), the representation, omission, or practice is material.[3] *In re Cliffdale Associates, Inc.*, 103 F.T.C. 110, 165 (1984); *accord F.T.C. v. Verity Int'l Ltd.*, 443 F.3d 48, 63 (2d Cir. 2006); *F.T.C. v. Cyberspace.Com LLC*, 453 F.3d 1196, 1199 (9th Cir. 2006); *F.T.C. v. Tashman*, 318 F.3d 1273, 1277 (11th Cir. 2003). A representation is material if it "involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *Cyberspace.Com LLC*, 453 F.3d at 1201 (quoting *In re Cliffdale Associates*, 103 F.T.C. at 165). The FTC need not show intent to deceive, *Verity Int'l Ltd.*, 443 F.3d at 63, nor is proof of actual consumer deception required.[4] *Cyberspace.Com LLC*, 453 F.3d at 1201; *F.T.C. v. Freecom Commc'ns,*

---

[3] The FTC articulated this test for deception in an October 14, 1983 letter to Congress (hereinafter, "Deception Policy Statement") and appended the letter to its ruling in *In re Cliffdale Associates, Inc.*, which applied the test. *See In re Cliffdale Associates, Inc.*, 103 F.T.C. 110, 164, 174 (1984). Courts have subsequently applied this test in deception cases under Section 5(a) of the FTC Act. *See, e.g., F.T.C. v. Cyberspace.Com LLC*, 453 F.3d 1196, 1199 (9th Cir. 2006); *F.T.C. v. Tashman*, 318 F.3d 1273, 1277 (11th Cir. 2003).

[4] Defendant argues that the FTC must show "consumer detriment." *See* Def. Mot. to Dismiss Reply at 7-8. In some cases, the deception test has been expressed as encompassing a "consumer detriment" requirement, rather than a materiality requirement. *See, e.g., F.T.C. v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1029 (7th Cir. 1988) ("In order to establish that an act or practice is deceptive, the FTC must establish that the representations, omissions, or practices likely would mislead consumers, acting reasonably, to their detriment.") Like the deception test generally, this "consumer detriment" language derives from the Deception Policy Statement appended to *In re Cliffdale Associates*, where the Commission stated: "The Commission will find an act or practice deceptive if there is a misrepresentation, omission, or other practice, that misleads the consumer acting reasonably in the

*Inc.*, 401 F.3d 1192, 1203 (10th Cir. 2005) ("Neither proof of consumer reliance nor consumer injury is necessary to establish a § 5 violation.").

Defendant argues that a different test applies. According to Defendant, the FTC must also allege and prove that Defendant's act or practice "causes or is likely to cause substantial injury to consumers" that was not "reasonably avoidable by consumers themselves." *See* Def. Mot. to Dismiss 8-12.

Defendant relies on Section 5(n) of the FTC Act, 15 U.S.C. § 45(n), for these added elements. Section 5(n) provides that the FTC may not prohibit an act or practice as "unfair unless the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." 15 U.S.C. § 45(n). Thus, Section 5(n) by its plain terms only applies to an act or practice that is "unfair," while Section 5(a) prohibits both "unfair or deceptive acts or practices." *See Cyberspace.Com LLC*, 453 F.3d at 1199 n.2 (noting that the "plain language" of Section 5(n) shows that its requirements do not apply to an FTC Act claim based on deception); *see also F.T.C. v. Inc21.com Corp.*, 688 F. Supp. 2d 927 (N.D. Cal. 2010) (applying Section 5(n) to FTC Act unfairness claims but not to FTC Act deception claims brought in the same action).

Defendant, relying on his own interpretation of legislative history, argues that Section 5(n) applies to all Section 5 cases – whether based on unfairness or deception – and that there is

---

circumstances, to the consumer's detriment." 103 F.T.C. at 183. However, in the deception context, a material misrepresentation is presumed to create consumer detriment; thus, no proof of actual consumer deception is required. As the Commission explained in *Cliffdale Associates*, "A 'material' misrepresentation or practice is one which is likely to affect a consumer's choice of or conduct regarding a product. In other words, it is information that is important to consumers. . . . Injury exists if consumers would have chosen differently but for the deception. If different choices are likely, the claim is material, and injury is likely as well. Thus, injury and materiality are different names for the same concept." *Id.*

actually no difference in the tests applied in deception and unfairness cases. *See* Def. Mot. to Dismiss Reply at 11-16. Defendant is incorrect.

Deception and unfairness, which are referenced separately in Section 5(a), provide two distinct rationales for FTC enforcement. *See Am. Fin. Servs. Ass'n v. F.T.C.*, 767 F.2d 957, 979 n.27 (D.C. Cir. 1985) ("Petitioners' argument fails to distinguish between unfair practices and deceptive practices. . . . the distinction between the deception rationale and the unfairness rationale tends to become obfuscated. Nonetheless the two rationales are distinct"); *see also In re Int'l Harvester Co.,* 104 F.T.C. 949, 1061 (1984) ("Unlike deception, which focuses on 'likely' injury, unfairness cases usually involve actual and completed harms.").

Contrary to Defendant's interpretations, the legislative history of Section 5(n) confirms the plain text that the section only applies to unfairness cases. The Court of Appeals has provided a useful overview of much of the relevant history. *See generally Am. Fin. Servs. Ass'n*, 767 F.2d 957. In short, "[c]onsiderable controversy developed during the mid to late seventies over the FTC's exercise of its consumer unfairness regulatory authority." *Id.* at 969. "[T]he FTC responded to the criticism leveled at the Commission's implementation of its unfairness authority by delineating a concrete framework for the future application of that authority," in the form of a Policy Statement on Unfairness. *Id.* at 970; *see Letter from Federal Trade Commission to Senators Ford and Danforth*, Dec. 17, 1980, reprinted in H.R.Rep. No. 156, Pt. 1, 98th Cong., 1st Sess. 33-40 (1983) (hereinafter "Unfairness Policy Statement"). As the D.C. Circuit explained, the Unfairness Policy Statement refined an earlier FTC policy outlining criteria for "determining whether a practice, which is neither anticompetitive *nor deceptive*, is nonetheless unfair to consumers." *Id.* at 971 (emphasis added). The Unfairness Policy Statement referenced a companion policy statement on deception that "discusses the ways in which this [consumer

unfairness] body of law differs from, and supplements, the prohibition against consumer deception." Unfairness Policy Statement at 2. Thus, the Unfairness Policy Statement drew a sharp distinction between the FTC's deception authority and its unfairness authority. Section 5(n) of the FTC Act, which Congress enacted in 1994, largely codified the Unfairness Policy Statement, as Defendant admits. *See* Def. Mot. to Dismiss Reply at 13. Thus, the Court finds that both the plain text and the legislative history of Section 5(n) indicate that the section does not apply in deception cases.[5]

All three counts against Defendant allege deceptive acts or practices. Consequently, the FTC is only required to allege a material representation, omission, or practice that is likely to mislead consumers acting reasonably under the circumstances. *See Cyberspace.Com LLC*, 453 F.3d at 1199.

### b. Failure to Plead with Particularity Under Rule 9(b)

Defendant argues that the Second Amended Complaint must be dismissed because the FTC has failed to plead its allegations with particularity pursuant to Rule 9(b)'s heightened pleading standard. The FTC counters that Rule 9(b) does not apply to actions under Section 5 of the FTC Act, and that, in any event, its pleadings satisfy the rule.

As noted earlier, under Rule 9(b), the plaintiff must "state the time, place, and content of the false representations, the fact misrepresented . . . and identify individuals allegedly involved in the fraud."[6] *Haralson*, 724 F. Supp. 2d at 84 (D.D.C. 2010) (citing *Martin-Baker Aircraft Co.*,

---

[5] Defendant argues in the alternative that if Section 5(n) does not apply in deception cases, the claims against him should be recharacterized as unfairness claims. Def. Mot. to Dismiss Reply at 15. Defendant argues that the counts against him "clearly fall into the 'unfairness' category of claims" and that the FTC should not be permitted to recast an unfairness claim as a deception claim. *Id.* The Court rejects this argument because Plaintiff is the master of the complaint and may choose to sue or not to sue on any cause of action for which it is possible to allege the elements necessary to establish a claim for relief.

[6] Ordinarily, Rule 9(b) would also require a pleading of "what was retained or given up as a consequence of the fraud." *Haralson*, 724 F. Supp. 2d at 84. Because reliance, intent, and injury are not elements of a Section 5 claim,

389 F.3d at 1256 (internal quotation and alteration omitted)).  In other words, the plaintiff must

identify the 'who, what, where, when and how' with respect to the circumstances of the alleged

fraud.  *See Stevens*, 662 F. Supp. 2d at 114.

It is unclear whether Rule 9(b) applies to a claim for deceptive acts or practices under

Section 5 of the FTC Act.  By its terms, Rule 9(b) only applies to claims for "fraud or mistake,"

and a claim for deceptive acts or practices under Section 5 is not a fraud claim.  Defendant

argues, however, that Rule 9(b) still applies because Plaintiff's FTC Act claims are akin to

claims for fraud or "sound in fraud."  *See* Def. Mot. to Dismiss at 6.

Courts have reached differing views on whether Rule 9(b) applies to claims under

Section 5 of the FTC Act.  *See Freecom Commc'ns, Inc.*, 405 F.3d at 1203 n.7 (noting that Rule

9(b) does not apply to FTC Act Section 5 claims); *FTC v. Med. Billers Network, Inc.*, 543 F.

Supp. 2d 283, 314 (S.D.N.Y. 2008) (declining to apply Rule 9(b) and noting that other district

courts have held that it does not apply); *but see F.T.C. v. Lights of America, Inc.*, No. SACV 10-

1333, 2010 WL 5564048, at *2-5 (C.D. Cal. Dec. 17, 2010) (holding that Rule 9(b) does apply to

Section 5 claims); *see also Witherspoon v. Philip Morris Inc.*, 964 F. Supp. 455, 464 (D.D.C.

1997) (applying Rule 9(b) to a claim under a District of Columbia deceptive trade practices

statute that the Court found "analogous" to a fraud claim).

The parties have not cited and the Court has not found any case within this Circuit that

has decided whether Rule 9(b) applies to Section 5 actions.  The D.C. Circuit has, however,

identified certain rationales as underlying Rule 9(b).  According to the Court of Appeals:

> [The rule] discourage[s] the initiation of suits brought solely for their nuisance value, and
> safeguards potential defendants from frivolous accusations of moral turpitude. . . . And

---

the FTC cannot be required to plead them.  *See Witherspoon*, 964 F. Supp. at 464 (noting that even though Rule 9(b)
applied to claims under a District of Columbia deceptive trade practices statute, plaintiff was not required to allege
intent since intent was not an element of the cause of action under the statute).

because 'fraud' encompasses a wide variety of activities, the requirements of Rule 9(b) guarantee all defendants sufficient information to allow for preparation of a response.

*U.S. ex rel. Williams v. Martin-Baker Aircraft Co., Ltd.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (quoting *U.S. ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981)); *see also* 5A C. Wright & A. Miller, *Federal Practice & Procedure*, § 1296 (3d ed.) (recognizing these rationales and others, including deterring suits brought solely to obtain discovery or "to reopen completed transactions or set aside previously issued judicial orders.")

Where, as here, an agency of the federal government, with all of its concomitant force, brings an accusation of implicit dishonesty against an individual, even if short of moral turpitude, the heightened pleading requirements of Rule 9(b) may serve an important safeguarding function. *Cf. Burnett v. Al Baraka Inv. and Dev. Corp.,* 274 F. Supp. 2d 86, 103 (D.D.C. 2003) ("It is worth recalling that one of the reasons for Rule 9(b)'s heightened pleading standard in fraud cases was 'the desire to protect defendants from the harm that comes to their reputations or to their goodwill when they are charged with serious wrongdoing . . . .'") (quoting *Ross v. A.H. Robins Co., Inc.*, 607 F.2d 545, 557 (2d Cir. 1979)).[7]

In any event, the Court does not need to rule on the applicability of Rule 9(b) to Section 5 actions here because, even assuming *arguendo* that Rule 9(b) applies, the FTC's allegations have been pled with sufficient particularity.

The Court will analyze the sufficiency of each of the three counts in the Second Amended Complaint in turn.

---

[7] At oral argument, the FTC suggested that any concern for reputational damage would be minimal here because, unlike fraud, intent is not an element of a Section 5 violation. While it is true that an allegation of intentional deception, as in fraud, is a more serious moral charge than deception under Section 5 of the FTC Act, there may still be a risk of comparable reputational damage because the general public may not be fully cognizant of the distinction. The FTC also suggested at oral argument that the heightened pleading standard of Rule 9(b) was unnecessary because Section 5 already encompasses a heightened pleading standard requiring the FTC to allege a "pattern or practice" of deception, but the Court has not found any references to this pleading standard in the Second Amended Complaint or the parties' briefs.

Count I of the Second Amended Complaint alleges the Defendant represented that he "operate[d] www.makinghomeaffordable.gov, www.financialstability.gov, or other federal homeowner relief or financial stability programs" and that he was or was affiliated with the United States government, when, in truth, he had no affiliation with those websites or the U.S. government. SAC ¶¶ 36-38. Plaintiff has pled sufficiently particularized facts in support of this count to satisfy Rule 9(b).

The Second Amended Complaint alleges that "[s]ince at least 2008," Defendants "solicited consumers to provide marketing leads for mortgage loan modification or foreclosure relief services through advertisements placed on Internet search result web pages."[8] *Id.* ¶ 19. Thus, the time frame of the misleading statements has been specified.[9] The Second Amended Complaint reproduces direct examples of allegedly deceptive advertisements, *Id.* ¶¶ 25, 27, and also specifies additional ad titles and text alleged to be deceptive, including "MakingHomeAffordable.gov," and "financialstability.gov," which correspond to federal government websites. *Id.* ¶¶ 26-27, 36. The Second Amended Complaint identifies search engines on which these statements appeared. *See id.* ¶¶ 20- 21. The Second Amended Complaint further alleges that the advertisements were deceptive because, in fact, Defendants had no connection to any of these government programs. *Id.* ¶¶ 28, 37-38.

In addition to the allegations in the Second Amended Complaint itself, the FTC's motion for a preliminary injunction in this case, which the Court granted in June 2009, and the

---

[8] While some of the allegations in the Second Amended Complaint refer to "Defendants" generally, the Second Amended Complaint is primarily directed at Defendant Lady and it was filed after all the other defendants except for one had already settled or been dismissed from the case. In any event, as discussed below, the opposition to the motion to dismiss specifically enumerates the allegations against Lady in particular.

[9] At oral argument, Defendant's counsel suggested greater specificity as to time would be required to satisfy Rule 9(b), but the Court finds the Plaintiff has adequately specified the time frame. Defendant's statements, unlike traditional statements made orally or in a written document, are alleged to have been made dynamically online in response to search queries during the alleged time frame.

opposition to the motion to dismiss spelled out the allegations against Lady in detail, including

allegations of the particular search engines on which Lady purchased his advertisements, the

particular search keywords on which he bid, and the allegedly deceptive ad titles featured in his

ads.[10]  *See* Pl. Mot. to Dismiss Opp. at 5-9.  For example, Plaintiff alleges that Lady purchased

advertisements on www.google.com ("Google").  *Id.* at 7.  On Google, Lady bid on keywords

"financial stability.gov," "fha.com," "financialsecurity.gov," "hope now alliance," "hope for

homeowners," "www.makinghomeaffordable.gov," and "makinghomeaffordable.gov."[11]  *Id.*

On Google, his advertisements displayed titles "Makinghomeaffordable.gov," "Financial

Stability.gov," "Fha Gov," "wwwhud.gov," "www.995hope.org," and "www.hopenow.com/."

*Id.*  The FTC alleges that consumers who clicked on Lady's advertisements were not directed to

the government websites, but rather to his own websites that collected marketing leads for

mortgage loan modification or foreclosure relief services.  *Id.*  Lady's websites prompted

consumers to enter personal identifying and confidential financial information, which Lady then

allegedly sold as marketing leads to persons who sell mortgage loan modification or foreclosure

relief services.  *Id.*  Plaintiff's factual allegations thus establish the "who, what, when, where,

and how" with respect to the circumstances of the alleged deception under Section 5 of the FTC

Act.

---

[10] "While it is generally understood that the complaint may not be amended by legal memoranda that are submitted as oppositions to motions for dismissal or summary judgment, courts have allowed, for Rule 9(b) purposes, a party to supplement its complaint through such legal memoranda . . . for the sake of judicial economy." *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 73 (D.D.C. 2002); *see also U.S. ex rel. El-Amin v. George Washington Univ.*, No. Civ.A. 95-2000, 2005 WL 485971, at *12 (D.D.C. Feb. 25, 2005).  To the extent there was any defect in the manner of pleading Count I in the Second Amended Complaint itself, it has been cured by the highly particular allegations recited against Lady in the FTC's opposition to the motion to dismiss.

[11] At oral argument, Defendant argued that bidding on search engine keywords is an insufficient basis to establish liability under Section 5.  The Court agrees that the allegation of bidding on particular keywords *per se* would not be a deceptive act or practice; however, the FTC's allegations go considerably further than merely alleging that Lady bid on keywords.  The gravamen of Count I is that the advertisements purchased in connection with the keywords contained deceptive titles and hyperlinks that were likely to mislead consumers.

Count II also satisfies Rule 9(b).  Count II alleges that Lady represented that he "will obtain for consumers mortgage loan modifications, in all or virtually all instances, that will make their mortgage payments substantially more affordable."  SAC ¶ 39.  The Second Amended Complaint alleges that this representation was "false or . . . not substantiated at the time the representation was made."  *Id.* ¶ 40.  More specifically, Plaintiff alleges that Defendant maintains at least two websites, www.homeownerhelp2009.com and www.helpforhomeowners.org, that have contained misleading representations regarding mortgage relief services; the allegedly misleading statements included "97% Success Rate" and "Guaranteed Solutions to Lower Your Rate Today!"  *Id.* ¶¶ 31-32.  While the Court notes that not all of the statements attributed to Lady's websites in the Second Amended Complaint appear to be statements that would mislead a reasonable consumer on their own – *e.g.*, "Let Us Negotiate With Your Lender For You," *Id.* – further facts about the overall presentation of these statements are required to assess how a reasonable consumer would interpret them.  Plaintiff has specified who made the misleading statements, what the statements were, and the circumstances in which the statements were made.  Consequently, Plaintiff has provided sufficient details for this count as well.

The same is true of Count III.  Count III alleges that Lady represented that he has helped "over 97% of his clients maintain a mortgage loan modification," *Id.* ¶¶ 42-43, and that these representations were false or unsubstantiated.[12]  *Id.*  Again, the Second Amended Complaint indicates that Defendant maintains at least two websites, www.homeownerhelp2009.com and www.helpforhomeowners.org, that have contained false or unsubstantiated statements regarding

---

[12] Plaintiff explained at oral argument that (1) these representations were false because Lady allegedly helped no clients directly, but rather simply sold consumers' personal information to others, and that (2) the representations were unsubstantiated in terms of the high percentage of such consumers that were represented to have obtained a mortgage modification.

mortgage relief services, including "97% Success Rate," and "Guaranteed Solutions to Lower Your Rate Today!" *Id.* ¶¶ 31-32.

"The main purpose of Rule 9(b) is to ensure that defendants have adequate notice of the charges against them to prepare a defense . . . 'A court should hesitate to dismiss a complaint under Rule 9(b) if [it] is satisfied (1) that the defendant has been made aware of the particular circumstances for which [he] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts.'" *U.S. ex rel. McCready v. Columbia/HCA Healthcare Corp.*, 251 F. Supp. 2d 114, 116 (D.D.C. 2003) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir.1999)). In this case, the allegations against Lady have been specified with sufficient particularity to apprise him of the conduct alleged to be deceptive and to enable him to prepare a defense for trial.

### c. Failure to State a Claim for Relief

Defendant also argues that the Second Amended Complaint fails to state a claim for relief under Rule 8(a). Fed. R. Civ. P. 8(a). As explained above, to establish a claim for deceptive acts or practices, the Plaintiff must allege a material representation, omission, or practice that is likely to mislead consumers acting reasonably under the circumstances. *See Cyberspace.Com LLC*, 453 F.3d at 1199.

Here, Plaintiff has stated a claim for relief because the pleaded facts detailed above "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. If proven, Plaintiff's allegations would enable a finding that Lady made material misrepresentations that were likely to mislead consumers acting reasonably under the circumstances.

For example, regarding Count I, a reasonable consumer might conclude after clicking on one of Lady's web advertisements featuring the web address "Makinghomeafforable.gov" that he or she would be redirected to that website or to a site affiliated with that website, but, in fact, the consumer would be directed to one of Lady's lead collection websites for mortgage services. In addition, the misrepresentation would be likely to mislead in a material way because whether or not a mortgage service is actually affiliated with the federal government is "information that [would be] important to consumers and, hence, likely to affect their choice of, or conduct regarding" that service. *Cyberspace.Com LLC*, 453 F.3d at 1201. Thus, with respect to Count I, Plaintiff has pled "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The FTC has also stated a plausible claim for relief for Counts II and III. Counts II and III allege that Lady made false or unsubstantiated representations on his websites that he "will obtain for consumers mortgage loan modifications, in all or virtually all instances, that will make their mortgage payments substantially more affordable" and that he has helped "over 97% of his clients maintain a mortgage loan modification." SAC ¶¶ 39-43. As detailed above, the particular statements allegedly provided on Lady's websites could mislead a reasonable consumer in the way the FTC has claimed. Further, the misrepresentations would be material because a service's prior success rate and likelihood of success convey material information, *i.e.*, information that would be important to consumer choice.

Most of Defendant's arguments that the Second Amended Complaint fails to state a claim for relief rely on the premise that Plaintiff must allege substantial consumer injury that was not reasonably avoidable by consumers themselves under Section 5(n) of the FTC Act. Since the Court has already explained that Section 5(n) does not apply in this action, those arguments are

largely inapposite.  Certain of Defendant's arguments, however, remain relevant to the issue of whether Defendant's alleged representations were "likely to mislead consumers acting reasonably under the circumstances," which is a required element of a Section 5 deception claim. Specifically, Defendant appears to argue that there was no likelihood of reasonable consumers being misled because (1) Defendant's advertisements were labeled as such and (2) Defendant's websites themselves are not alleged to have imitated actual government websites in any way that would "mislead consumers into believing that they were viewing a federal program website." *See* Def. Mot. to Dismiss 10-12.

Defendant suggests the Second Amended Complaint must be dismissed because it acknowledges that Defendant's advertisements were differentiated from "organic search results." *See* Def. Mot. to Dismiss at 10-11; Def. Mot. to Dismiss Reply at 10-11.  For example, Defendant points out that the Second Amended Complaint notes that the allegedly deceptive ads were presented in a "specified ad format," including labels such as "sponsored sites" or "sponsored links."  *See* Def. Mot. to Dismiss at 10-11; SAC ¶¶ 22, 25, 27.   According to Defendant, reasonable consumers would "know when they click on such 'sponsored ads' that they are not connecting to a search result . . . but rather that they are visiting the website of a paid advertiser."  Def. Mot. to Dismiss Reply at 10.  This argument misses the mark because the FTC is not alleging that Defendant misled consumers into thinking his ads were organic search results instead of paid advertisements; the alleged deception is that Defendant's "sponsored links" or "sponsored ads" misled consumers into believing they were clicking on *government-sponsored* links or ads.  There is no reason for consumers to assume that search engines do not feature government-sponsored advertisements.  Thus, the designation of Defendant's advertisements as

18

advertisements is irrelevant to the issue of whether the content of those advertisements was deceptive.

Similarly, Lady's argument that Plaintiff's claims fail because Plaintiff has not alleged that Lady's lead collection websites were designed to imitate federal program websites is unavailing. Internet users may not know what the real federal program website looks like until they successfully navigate to it. If they are diverted by advertisements bearing the name and web address of the federal program before ever reaching the program's actual website, reasonable consumers could assume they have reached their intended destination, when, in fact, they have reached a commercial service. This same reasoning precludes Lady's argument that the Second Amended Complaint fails because it acknowledges that the services offered on his website were different from those offered by the federal programs. *See* Def. Mot. to Dismiss at 11. There is no reason to expect a consumer to know the precise services offered by the federal program until he or she actually reaches the program's website and obtains information about those services. Whether or not Lady's ads and websites, taken in their full context, were "likely to mislead consumers acting reasonably under the circumstances" is ultimately a factual question that cannot be resolved at the motion to dismiss stage. A "court deciding a motion to dismiss must . . . assume all the allegations in the complaint are true . . . [and] must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged." *Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc*., 525 F.3d 8, 18 (D.C. Cir. 2008) (internal quotations marks and citations omitted). Based on the facts alleged and giving the Plaintiff the benefit of all reasonable inferences, the Court concludes that the Plaintiff has stated a plausible claim that Lady's ads and websites were likely to mislead consumers acting reasonably under the circumstances.

Accordingly, Defendant's motion to dismiss is denied. The Court will now turn to Defendant's motion to strike.

### B.  Motion to Strike

Pursuant to Fed. R. Civ. P. 12(f), Defendant has moved to strike certain portions of the Second Amended Complaint that seek to obtain equitable monetary relief under Section 13(b) of the FTC Act. For example, Defendant seeks to strike the words "rescission or reformation of contracts, restitution, disgorgement of ill-gotten monies, and other equitable relief" from Paragraph 1 of the Second Amended Complaint and to strike other similar references to equitable monetary relief from other paragraphs of the Second Amended Complaint. *See* Def. Mot. to Strike at 1. According to Defendant, this material should be stricken from the pleadings because the FTC is not authorized to seek or obtain any monetary relief under Section 13(b) of the FTC Act. *Id.*

The FTC contends that Defendant's challenge to the FTC's statutory authority is not properly litigated on a motion to strike and that, in any event, well-settled case law establishes that the FTC may seek equitable monetary relief under Section 13(b) of the Act. *See* Pl. Mot. to Strike Opp. at 1, 4.

Rule 12(f) provides that the court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The decision to grant or deny a motion to strike is committed to the trial judge's sound discretion. *Nwachukwu v. Karl*, 216 F.R.D. 176, 178 (D.D.C. 2003). "[S]triking portions of a pleading is a drastic remedy, and motions to strike are disfavored." *Nugent v. Unum Life Ins. Co. of Am.*, No. 10-266, 2010 WL 4780847, at *5 (D.D.C. Nov. 24, 2010). In addition, while Rule 12(f) "does not require the moving party to show that it would be prejudiced should the allegations remain part of the

pleading, courts view motions to strike portions of a complaint with such disfavor that many courts will grant such a motion only if the portions sought to be stricken as immaterial are also prejudicial or scandalous." *Uzlyan v. Solis*, 706 F. Supp. 2d 44, 51-52 (D.D.C. 2010) (internal quotation marks omitted).

The Court declines to invoke the "drastic remedy" of striking parts of the Second Amended Complaint. The FTC's allegations seeking equitable monetary relief are not scandalous or prejudicial, nor are they clearly immaterial or impertinent. While Defendant contends that these allegations would be rendered "immaterial" and "impertinent" if the Court were to accept Defendant's interpretation of the FTC Act, *see* Def. Mot. to Strike Reply at 5, the Court would have to rule on disputed and complex legal issues to determine whether Defendant's interpretation of the Act is correct.

To accept Defendant's argument that Section 13(b) does not entitle the FTC to seek equitable monetary relief, the Court would have to depart from three decades of legal precedent, as Defendant admits. *See* Def. Mot. to Strike at 23. Every court that has considered the issue thus far appears to have ruled that Section 13(b) *does* entitle the FTC to seek equitable monetary relief, including courts in this district and multiple Courts of Appeals. *See, e.g.*, *FTC v. Mylan Labs., Inc.*, 62 F. Supp. 2d 25, 37 (D.D.C. 1999); *FTC v. Gem Merch.*, 87 F.3d 466, 470 (11th Cir. 1996); *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1102 (9th Cir. 1994); *FTC v. Sec. Rare Coin & Bullion Corp.*, 931 F.2d 1312, 1316 (8th Cir. 1991); *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 571-72 (7th Cir. 1989); *F.T.C. v. Swish Marketing*, No. C 09-03814 RS, 2010 WL 653486, at *6-10 (N.D. Cal. Feb. 22, 2010).[13] Defendant does not cite any cases to the contrary.

---

[13] The defendant in *Swish Marketing* was represented by the same counsel as Defendant in this action. In that case, the court considered the merits of arguments that are substantially similar to Defendant's arguments here and ultimately denied the defendant's motion to strike.

This Court will not address Defendant's challenge to the prevailing interpretation of the FTC Act in the context of a motion to strike. *See Iacangelo v. Georgetown Univ.*, No. 05-2086, 2007 WL 915224, at *4 (D.D.C. Mar. 26, 2007) (declining to address the applicability of a theory of liability referenced in the complaint on a motion to strike); *see also Chaconas v. JP Morgan Chase Bank*, 713 F. Supp. 2d 1180, 1191 (S.D. Cal. 2010) ("[C]ourts are reluctant to determine disputed or substantial questions of law on a motion to strike"); 5C C. Wright & A. Miller, *Federal Practice & Procedure*, § 1381 (3d ed.) ("[E]ven when the defense seems to present a purely legal question, federal courts are very reluctant to determine disputed or substantial issues of law on a motion to strike; these questions quite properly are viewed as best determined only after further development by way of discovery and a hearing on the merits . . .") The relief available for Plaintiff's claims is a question best addressed once an entitlement to relief is proven in this case. *See Ambac Assur. Corp. v. EMC Mortg. Corp.*, No. 08 Civ. 9464, 2009 WL 734073, at *2 (S.D.N.Y. Mar. 16, 2009).

Finally, Defendant will not be prejudiced if the challenged portions of the Second Amended Complaint are not stricken. Defendant does not attempt to identify any prejudice except by arguing that if the motion to strike is denied, "the case remains larger, more complex and in turn, more expensive" for Defendant. Def. Mot. to Strike Reply at 7. Significantly, there will be no prejudice to any defense Lady may raise in this action. So, even if the equitable monetary relief allegations were to be deemed "immaterial," they are not also prejudicial; therefore, denying the motion to strike is appropriate. *See Uzlyan*, 706 F. Supp. 2d at 51-52.

Accordingly, the Court declines to exercise its discretion to strike any portions of the Second Amended Complaint.

### III.    Conclusion

For the reasons stated above, Defendant Lady's motion to dismiss pursuant to Rule

12(b)(6) and motion to strike pursuant to Rule 12(f) are DENIED.


Date: March 3, 2011


/s/ *Beryl A. Howell*
BERYL A. HOWELL
United States District Judge